# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Argued August 11, 2000

## WILLIAM P. HENDERSON, ET AL. v. HENRY CLAY HART, JR.

### Direct Appeal from the Circuit Court for Knox County
### No. 2-604-98 Harold Wimberly, Judge

### FILED 0CT0BER 2, 2000

### No. E1999-01446-COA-R3-CV

___

This appeal arises from an executory contract for the sale of real property. Henry Clay Hart, Jr., the Appellant, appeals the judgment from the Knox County Circuit Court in favor of William P. Henderson and Lillian R. Henderson, the Appellees. Mr. Hart raises the issues of whether the Trial Court had proper subject matter jurisdiction to hear the case and whether the Court erred in finding that the executory sales contract was no longer in effect. We affirm the judgment of the Trial Court and remand for such further proceedings as may be necessary consistent with this opinion. We adjudge costs of appeal against Henry Clay Hart, Jr. and his surety.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

James H. Kinnard, Lebanon, Tennessee, for the appellant, Henry Clay Hart, Jr.

Michael L. DeBusk, Knoxville, Tennessee, for the appellees, William P. Henderson and Lillian R. Henderson.

### OPINION

This appeal arises from an executory contract for the sale of real property. Henry Clay Hart, Jr., the Appellant, appeals the judgment from the Knox County Circuit Court in favor of William P. Henderson and Lillian R. Henderson, the Appellees.

Mr. Hart presents the following issues, which we restate, for our review:

1. Whether the Trial Court lacked subject matter jurisdiction.

2. Whether the Trial Court erred in its determination that the original executory real estate sales contract was no longer in effect.

We affirm the judgment of the Trial Court and remand for such further proceedings as may be necessary consistent with this opinion.

In the months preceding December 1996, Mr. Hart and the Hendersons had engaged in discussions for the sale of real property located at 4401 Washington Pike in Knox County. The Hendersons owned the home, which included a garage and an apartment on the property that could be used for rental property. On December 19, 1996 the parties signed a contract entitled "Executory Real Estate Sales Contract." Most of what transpired during the next couple of years is disputed by the parties.

The down payment was to be for $4000, but Mr. Hart could not obtain the money for the down payment. Instead, he paid only $650 with a credit card. When the second payment became due, Mr. Hart could not make that payment as well. According to the Hendersons, they paid the entire December 1996 utility bill for the property, although one-half the bill was Mr. Hart's responsibility.

Between December 19, 1996 and late March 1998, the Hendersons and Mr. Hart engaged in discussions regarding Mr. Hart's inability to make payments. During these discussions the down payment amount was reduced from $4,000 to $2,000. No written agreement stating these changes from the original agreement was signed by the parties. According to the Hendersons, they understood that they would maintain possession of the double garage and the apartment over the garage and would continue to rent the apartment and own the rent. Mr. Hart disputes this assertion by the Hendersons and insists that he should have received the rent from the apartment on the property.

The Hendersons state that they informed Mr. Hart that they needed some payment toward the property, and the Hendersons maintain that Mr. Hart agreed to pay $450 each month for rent until he could obtain his own financing and a loan. The Hendersons state that the executory real estate sales contract was cancelled by agreement of the parties because Mr. Hart broke the agreement by not presenting them with the down payment and by not making payments. The parties had a verbal agreement deadline of July 1997 to complete the sale. Because the month of July had almost passed and Mr. Hart could not obtain a loan, the Hendersons prepared a residential rental contract. They signed the agreement and then sent it to Mr. Hart at the end of July 1997. Mr. Hart did not sign the agreement. However, Mr. Hart paid his rent by check in the amount of $450 and on

the memo portion of the check made the notation "rent." In his letter dated February 23, 1998 and his letter dated June 30, 1998, Mr. Hart indicates that his payments are rent. Furthermore, in his amended complaint Mr. Hart labels his payments as "rent for the premises."

In March 1998 the parties entered into a new sales agreement for the real property. However, that agreement was not completed because Mr. Hart was unable to obtain a loan. That contract provided that "time was of the essence" and a closing was required by May 8, 1998.

Mr. Hart maintains that he never defaulted on the original executory contract. He believes that the Hendersons constructively evicted him by moving someone into the rental apartment on the property and by keeping the rental proceeds for themselves. He admits that he filed seven different loan applications and was unsuccessful in obtaining a loan. However, he insists that there was never a mutual recision of the contract.

The Trial Court found that the original contract entered into by the parties on December 19, 1996 became nonexistent by the parties' variances, changes, and alterations of the terms of the agreement. The Court noted that "[t]he parties entered and signed a second agreement on March 31, 1998, which was not completed by the Defendant. The Defendant was a leasehold tenant and agreed to pay $450.00 each month as rent to the Plaintiffs." The Court further found that Mr. Hart owes unpaid rent in the amount of $5,900 and found that the Hendersons were entitled to the immediate possession of the property. Finally, the Trial Court "found that under the facts and circumstances of this case, the equitable relief requested by the Defendant was not appropriate."

In his first issue, Mr. Hart argues that the Circuit Court did not have subject matter jurisdiction over the proceedings. He contends that this case involves an equity question with respect to the original executory sales contract and that his counterclaim for specific performance of the original sales contract also involves an equity question. He maintains that the Chancery Court should have heard this case because of the equitable issues.

The Hendersons, however, argue that the Circuit Court did have subject matter jurisdiction. They assert that a counterclaim "was indeed filed by the Appellant's trial counsel with the Circuit Court alleging equitable issues for the specific stated purpose to give the Circuit Court jurisdiction to hear the whole matter at one time and render a full and complete verdict as opposed

to a partial verdict." Furthermore, the Hendersons note that this pleading was filed on June 3, 1999, which was one day after the trial began. They insist that Mr. Hart should not be allowed to complain that the Circuit Court "lacks subject matter jurisdiction over these proceedings when the Appellant's own trial counsel made a strategic decision to late file his pleading alleging equitable issues so the Circuit Judge could conduct a full hearing and render a complete judgment." In addition, the Hendersons maintain that the Circuit Court determined after hearing the evidence that this case does not present any equitable question because the original executory sales contract was not in effect.

Circuit court has jurisdiction to determine whether the suit is of an equitable nature. Hewgley v. Trice, 340 S.W.2d 918, 921 (Tenn. 1960).

The Trial Court heard this case and determined that the suit did not present issues of an equitable nature because the original executory sales contract was not in effect. We are of the opinion that the Trial Court properly exercised subject matter jurisdiction over the instant case and properly found that no equitable issues are involved in this case. Therefore, this issue is without merit.

In his second issue, Mr. Hart argues that the Trial Court erred in finding that the executory real estate sales contract was no longer in effect. He contends that there was never a mutual recision of the December 19, 1996 contract and that the original contract was still in effect. He also states that he "did not perform any acts which evidenced an intention not to be bound by the Executory Real Estate Sale Contract of December 19, 1996." Mr. Hart argues that the Trial Court erred in finding that he owes the Hendersons $5,900 as of June 3, 1999 and that they are entitled to immediate possession of the premises. He claims that the Court should have given him a credit of $500 per month from June 1998 instead of a judgment against him.

The Hendersons argue that the original agreement was not in effect because of all the changes that had occurred since the parties signed the agreement in December 1996. The Hendersons insist that the Trial Court properly awarded them $5,900 and immediate possession of the premises. They point to the Trial Court's finding that there was a verbal agreement for rent in the amount of $450 per month and that it is undisputed that the Appellant has made no payment since March 1998. Accordingly, the Hendersons assert that they are entitled to immediate possession of the premises.

Rule 13(d) of the Tennessee Rules of Appellate Procedure governs our scope of review: findings of fact by the Trial Court in civil cases shall be <u>de novo</u> upon the record of the Trial Court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. "Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." <u>Humphrey v. David Witherspoon, Inc.</u>, 734 S.W.2d 315 (Tenn. 1987).

"The ordinary rule in contractual matters is that the last agreement as to the same subject matter which is signed by all parties supercedes all former agreements and the last contract is the one which embodies the true agreement." <u>Bringhurst v. Tual</u>, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980).

After the original contract of December 19, 1996, Mr. Hart and the Hendersons entered into a "REAL ESTATE SALES CONTRACT" in late March 1998. Both parties signed the agreement, so that agreement would supersede the December 19, 1996 agreement. Thus, we agree with the Trial Court that the original contract of December 19, 1996 was no longer in effect. Furthermore, we agree with the Trial Court's findings that Mr. Hart is a tenant and owes the Hendersons $5,900 in rent and that the Hendersons are entitled to immediate possession of the entire premises at 4401 Washington Pike.

Finally, the Hendersons ask us to find that Mr. Hart's appeal is frivolous. We decline to do so.

Based on the foregoing, we affirm the judgment of the Trial Court and remand for such further proceedings as may be necessary consistent with this opinion. Costs of appeal are adjudged against Henry Clay Hart, Jr. and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE